O

# United States District Court
# Central District of California

LUIS VILLEGAS,

      Plaintiff,

      v.

HEAVENLY MOUNTAIN, LLC, a
California Limited Liability Company;
STARBUCKS CORPORATION, a
Washington Corporation; and Does 1-10,

      Defendants.

Case № 2:18-cv-06716-ODW (PLAx)

**ORDER GRANTING DEFENDANT STARBUCKS'S MOTION FOR SUMMARY JUDGMENT [46] AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [47]**

## I. INTRODUCTION

Plaintiff Luis Villegas alleges the sales counter, bathroom mirror, and parking area at Defendant Starbucks Corporation's coffee shop violate the Americans with Disabilities Act ("ADA") and the Unruh Civil Rights Act ("UCRA"). (Compl. ¶¶ 11–31, ECF No. 1.) Starbucks moves for summary judgment, and Villegas moves for partial summary judgment against Starbucks.[1] (Starbucks Mot., ECF No. 46; Villegas Mot., ECF No. 47.) The Motions are fully briefed. (*See* Opp'n Villegas Mot., ECF

---

[1] Villegas also brought this action against Starbucks's landlord, Defendant Heavenly Mountain, LLC. The Clerk of the Court entered default as to Heavenly Mountain on September 12, 2018. (Default, ECF No. 20.)

No. 52; Opp'n Starbucks Mot., ECF No. 54; Reply Starbucks Mot., ECF No. 58; Reply Villegas Mot., ECF No. 57.)   For the following reasons, Starbucks's Motion is **GRANTED**, and Villegas's Motion is **DENIED**.[2]

## II.  BACKGROUND

Villegas uses a wheelchair for mobility.  (Pl.'s Statement of Uncontroverted Facts ("PSUF") ¶ 1, ECF No. 47-2.)  On March 27, 2018, Villegas visited Starbucks's coffee shop located at 3853 East Third Street in Los Angeles, California (the "Shop"), to "get something to drink and to assess it for compliance with access laws."  (PSUF ¶¶ 3,6; Def.'s Statement of Uncontroverted Facts ("DSUF") ¶ 1, ECF No. 46-2.)

The Shop provides one continuous transaction counter for use by all customers (the "Counter"), and the approach to the Counter is a parallel approach.  (Pl.'s Resp. to DSUF ¶¶ 3, 6, ECF No. 54-1.)  The Counter is less than 36 inches in height *and* less than 36 inches in length.  (Pl.'s Resp. to DSUF ¶¶ 3–4.)  Also, the bottom edge of the Shop's restroom mirror (the "Mirror") measures *less* than 40 inches above the floor. (DSUF ¶ 7; Pl.'s Resp. to DSUF ¶ 7.)   Additionally, Heavenly Mountain owns the shopping center containing the parking spaces and access aisle (the "Parking Area") near the Shop.  (Pl.'s Resp. to DSUF ¶ 8.)  After assessing the premises, Villegas filed this action against Starbucks and Heavenly Mountain, alleging that the Counter, the Mirror, and the Parking Area violate the ADA and the UCRA.[3]  (Compl. ¶¶ 11–31.)

---

[2] After carefully considering the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[3] Villegas requests the Court take judicial notice of the Department of Justice's publication, "Maintaining Accessible Features in Retail Establishments."  (Villegas's Request for Judicial Notice ("Villegas's RJN"), ECF No. 48.)  The Court may take judicial notice of "fact[s] . . . not subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Here, Villegas does not request judicial notice of any particular fact, only of a purported source.  As such, granting Villegas's RJN would be meaningless.  In any event, the Court does not rely on the proffered document to resolve the present Motions, nor does the Court's disposition turn on noticing the proffered document.  Therefore, Villegas's RJN is **DENIED**.

### III.  LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007).  A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  The court may not weigh conflicting evidence or make credibility determinations, but there must be more than a mere scintilla of contradictory evidence to survive summary judgment.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Celotex*, 477 U.S. at 322–23.  Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).  The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to the case when that party will ultimately bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine

dispute." C.D. Cal. L.R. 56-1.  A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute.  C.D. Cal. L.R. 56-2.  "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence . . . ." C.D. Cal. L.R. 56-3.

## IV.  DISCUSSION

Villegas asserts that Starbucks violates the ADA and the UCRA for three reasons: (1) the Counter is cluttered, (2) the Mirror is mounted too high, and (3) the Parking Area is too sloped.  (Compl. ¶¶ 11–31.)  The Court addresses these claims in turn.

### A.    ADA Claims

"Title III of the ADA prohibits discrimination on the basis of disability in the 'full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.'"  *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 904 (9th Cir. 2011) (quoting 42 U.S.C. §§ 2000a(b), 12182(a) ).  To prevail on a claim for discrimination under Title III of the ADA, a plaintiff must show that "(1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation"; and (3) the defendant denied public accommodation to the plaintiff because of her disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).  "The third element . . . is met if there was a violation of applicable accessibility standards."  *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal 2011); *see Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (en banc).

### 1.    Counter

First, Villegas argues that the Counter violates the ADA because it is so "cluttered" that it violates 28 C.F.R. § 36.211(a).  That regulation requires places of public accommodation to "maintain in operable working condition those features of

facilities and equipment that are required to be readily accessible to and usable by persons with disabilities . . . ."  28 C.F.R. § 36.211(a).  Specifically, Villegas cites section 904.4.1 of the 2010 ADA Standards for Accessible Design ("2010 Standards") to argue that "where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is . . . 36 inches in width that extends the same depth as the rest of the sales or service counter top." (Villegas Mot. 10–11 (citing 36 C.F.R. Pt. 1191, App'x D § 904.4.1).)[4]  Starbucks, on the other hand, argues that it is not required "to maintain a 36[-inch] length of clear accessible counter," or even any counter at all, and therefore, its countertop merchandise and displays do not violate the ADA.  (Starbucks Mot. 12, 14.)  Starbucks is correct.

"Section 904.4.1 of the 2010 Standards expressly contemplates counters that are built to be less than 36 inches long."  *Johnson v. Starbucks Corp.*, 818 F. App'x 657, 659 (9th Cir. 2020); *Kong v. Mana Inv. Co., LLC*, 818 F. App'x 660, 663 (9th Cir. 2020); *Lindsay v. Starbucks Corp.*, 815 F. App'x 152, 154 (9th Cir. 2020).  Consequently, the Ninth Circuit has held that § 36.211(a) does not require Starbucks to "maintain" 36 inches of usable counter space.  *Johnson*, 818 F. App'x at 659–60; *Kong*, 818 F. App'x at 663; *Lindsay*, 815 F. App'x at 154.

Here, the Counter is of a uniform height, less than 36 inches tall.  (Pl.'s Resp. to DSUF ¶ 3.)  Thus, despite Villegas's arguments to the contrary, Starbucks is not required to maintain 36 inches (in length) of usable counter space.  *See, e.g.*, *Johnson*, 818 F. App'x at 660.  Moreover, the ADA does not require public accommodations to provide transaction counters at all.  Rather, the 2010 Standards instruct: "*Where provided*, at least one type of sale counter and service counter shall comply with 904.4."  36 C.F.R. Pt. 1191, App'x C § 227.3 (emphasis added).  Because the guidelines contemplate that no counter might be provided at all, and because there is no length requirement under § 904.4.1 (or otherwise) for counters that are uniformly less than 36 inches tall, Villegas

---

[4] However, Villegas also concedes that the Counter does not violate "the technical standards found in Section 904.4.1."  (Villegas Mot. 10.)

cannot prevail on his ADA claim. As a matter of law, "Starbucks'[s] obligation to maintain the transaction counter in operable working condition [does not] demand[] any particular length of clear space for customer use." *Kong v. Mana Inv. Co.*, No. SA CV 18-01615-DOC (DFM), 2019 WL 3220027, at *4 (C.D. Cal. May 1, 2019), *aff'd*, *Kong*, 818 F. App'x at 663.[5]

In short, there is no maintenance requirement where there is no counter requirement. "[M]aintenance requirements cannot be more stringent than the building requirements." *Johnson*, 818 F. App'x at 660; *Kong*, 818 F. App'x at 663; *Lindsay*, 815 F. App'x at 155; *accord Lammey v. Starbucks Corp.*, No. CV 18-9972-JFW(ASx), 2020 U.S. Dist. LEXIS 239344, at *7–14 (C.D. Cal. Dec. 15, 2020); *Arroyo v. Baseline Enter. LLC*, No. CV 19-10641-DFM, 2020 WL 6438412, at *4–5 (C.D. Cal. Oct. 19, 2020). Thus, Villegas's ADA claim fails as a matter of law to the extent it is directed at the Counter.

### 2. Mirror

Second, Villegas alleged that the Mirror violates the ADA because it is mounted 42 inches above the floor in excess of the 40-inch height limit imposed by 36 C.F.R. Pt. 1191, App'x D § 603.3. (Compl. ¶ 24.) Starbucks has since repositioned the Mirror to a compliant height, and Villegas concedes his request for injunction is moot. (Starbucks Mot. 15–17; Villegas Opp'n 2.) Thus, Villegas's ADA claim is moot to the extent it is directed at the Mirror.

### 3. Parking

Third, Villegas alleges that Starbucks violates the ADA because the Parking Area "contains slopes and cross-slopes" exceeding 2.08% in violation of 36 C.F.R. Pt. 1191, App'x D § 502.4. (Villegas Mot. 2–3, 8–9.) Starbucks, on the other hand, argues that it "cannot be liable for any barriers" in the Parking Area because it "does not own,

---

[5] The Court also notes that Villegas does not provide any evidence that Starbucks's merchandise or displays actually hindered his use of the Counter, or that his access to clear counter space differed from that of any other customers. To the contrary, Villegas states that he successfully "complete[d] the transaction" despite the cluttered Counter. (Villegas Mot. 3; *id.*, Ex. 4)

operate, lease, or control" that portion of the premises; rather, Heavenly Mountain owns and is liable for the Parking Area.  (Starbucks Mot. 2)  In response, Villegas argues that Starbucks is liable because Starbucks's lease with Heavenly Mountain gives Starbucks a "right to approve plans for configuration" of the Parking Area and requires Heavenly Mountain to obtain Starbucks's approval before "varying" the "means of ingress and egress to the building."  (*See* Villegas Opp'n, Ex. 1 ("Lease") 3, 6, ECF No. 54-5.)[6]

The ADA imposes compliance obligations on "any person who owns, leases (or leases to), or operates a place of public accommodation."   42 U.S.C. § 12182(a). Though the ADA "imposes concurrent obligations on landlords and tenants," a tenant has "ADA compliance obligations [only] for that part of the property it controls." *Kohler v. Bed Bath & Beyond of California, LLC*, 780 F.3d 1260, 1264 (9th Cir. 2015). In *Kohler*, the Ninth Circuit affirmed that a tenant whose lease did not include the parking lot was not liable for any ADA barriers occurring there.  *See id.* at 1264 (noting that liability in such a case "serves no purpose other than to magnify the potential targets for an ADA lawsuit"); *Villegas v. Haroon*, No. 2:19-cv-09224-SVW-AFM, 2020 WL 6032028, at *3 (C.D. Cal. Aug. 12, 2020) (finding the defendant did not have "control" over the parking area where the leased premises did not include the parking area and the landlord offered parking to all tenants)

Here, Villegas seeks to impose liability where none exists.  Villegas contends that *Kohler* applies only when the area at issue is "*exclusively* under the control of the landlord," which is not the case here because Starbucks has the right to approve changes to the Parking Area.  (Opp'n Starbucks Mot. 10 (emphasis in original) (quoting *Kohler*, 780 F.3d at 1266).)  But the right to approve a change does not amount to the level of "control" necessary to impose ADA liability.  Rather, under *Kohler*, absent evidence that Starbucks "owns, leases, . . . , or operates" the Parking Area, it has no ADA compliance obligations as to that portion of the premises.  *Kohler*, 780 F.3d at 1264.

---

[6] As the Lease is compiled, with partially incomplete pagination, for this document only the Court cites to the CM/ECF pagination at the top of each page.

Here, the lease does not provide that Starbucks owns, leases, or operates the Parking Area.  Instead, it states that Starbucks leases only "3853 E. 3[rd] Street, Suite E" and the "drive-through"—i.e., not the Parking Area.  (Villegas Mot., Ex. 2, First Amendment to Commercial Lease 1, ECF. No. 54-4; Lease 1.)  Thus, the lease does not raise a genuine issue of material fact over Starbucks's liability for ADA violations in the Parking Area.

The evidence clearly shows the Parking Area is owned and controlled by Heavenly Mountain, with the lease specifying that Heavenly Mountain "shall provide all parking needed for [Starbuck]'s employees and customers" at no expense, and that "[s]uch parking shall be in common with other tenants." (Lease 6.)  Nowhere does the lease provide that Starbucks may alter the Parking Area; in fact, it provides that Heavenly Mountain "warrants" that the Parking Area is ADA-compliant and bears responsibility for "correct[ing] any such defects." (Lease 2.)  At most, Starbucks may notify Heavenly Mountain of defects, but cannot actually remedy ADA noncompliance on its own.  (*Id.*)  Without the ability to carry out a court-ordered injunction, the Court cannot find that Starbucks has control over the Parking Area to create ADA compliance obligations.  Villegas's ADA claim regarding the Parking Area fails as a matter of law to the extent it is asserted against Starbucks, and, therefore, summary judgment in favor of Starbucks is appropriate as to this claim.

**B.   UCRA Claims**

Villegas also asserts a claim under the UCRA based on the alleged ADA violations.  (Compl. ¶¶ 16, 19–20.)  While a plaintiff may maintain an independent UCRA claim by alleging intentional discrimination, Villegas does not make such an argument here.  (*See* Villegas Mot. 16.)  Because Villegas's UCRA claims rise and fall with his ADA claims, his UCRA claims against Starbucks fail as well.  *See, e.g.*, *Lammey v. Starbucks Corp.*, 2020 U.S. Dist. LEXIS 239344, at *17; *Cooper v. Wal-Mart Real Estate Bus. Tr.*, No. EDCV 19-238 JGB (SPx), 2020 WL 3881604, at *5

(C.D. Cal. Apr. 3, 2020).   Summary judgment is likewise appropriate in favor of Starbucks on these claims.

## V.   CONCLUSION

For the aforementioned reasons, Starbucks's Motion for Summary Judgment is **GRANTED**, (ECF No. 46), and Villegas's Motion for Partial Summary Judgment is **DENIED** (ECF No. 47).  The Court shall issue a separate Judgment with respect to the claims against Starbucks.

The Court also notes that default has been entered against Heavenly Mountain. Thus, Villegas is **ORDERED** to file a properly noticed motion for default judgment against Heavenly Mountain within **twenty-one (21) days** of the date of this Order. Failure to comply with this order may result in dismissal of all claims against Heavenly Mountain, without further warning, for lack of prosecution and failure to comply with the Court's orders.

**IT IS SO ORDERED.**

April 26, 2021

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**